UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

JOE R. SNOW,
                Petitioner,

v.                                         Case No. 5:03-cv-99-Oc-10GRJ


SECRETARY, DEPT. OF CORRECTIONS,

                Respondent.
_____

## ORDER DENYING THE PETITION

Petitioner initiated this case by filing a *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1). The Petition stems from Petitioner's 1989 Lake County jury-trial convictions of one count of sexual battery upon a child under 12 years of age, for which Petitioner received a life sentence with a 25-year mandatory minimum, and one count of committing a lewd and lascivious act, for which Petitioner received a concurrent five and one-half year sentence. Upon due consideration of the Petition, the Response, Amended Response, Appendix, and Petitioner's replies, the Court concludes that the Petition must be denied.[1]

## Procedural History

Petitioner's convictions were affirmed without opinion on direct appeal. See Snow v. State, 557 So. 2d 879 (Fla. 5th DCA 1990). Petitioner unsuccessfully sought

---

[1] Because the Court may resolve the Petition on the basis of the record, the Court has determined that an evidentiary hearing is not warranted. See Rule 8, Rules Governing Habeas Corpus Petitions Under Section 2254.

postconviction relief on the ground of ineffective assistance of counsel.  See Snow

v. State, 604 So. 2d 493 (Fla. 5th DCA 1992).

At the time of Petitioner's trial in January1989, the two victims, Petitioner's

daughters Tamara Snow and Amanda Snow, were ages seven and five,

respectively.  See Resp. App. at 15.[2]  More than 10 years after trial, in December

1999, the sisters executed affidavits stating that Petitioner had not molested or

sexually battered them, but also stating that they had no memory of Petitioner

molesting or sexually abusing them.  Resp. App. at 12, 13.  On the basis of these

affidavits, Petitioner, through counsel, filed a Rule 3.850 motion for postconviction

relief on February 2, 2000.  Id. at 8.

The trial court conducted an evidentiary hearing on Petitioner's motion on July

14, 2000.  Supp. App. tab B (transcript).  The testimony adduced at the hearing may

be summarized as follows.  Amanda Snow was 16 years old at the time of the

evidentiary hearing on Petitioner's postconviction motion.  Id. at 4.  On direct

examination, she testified that she recalled signing the affidavit and that the contents

of the affidavit were true because she didn't remember anything that had happened

to her.  Id. at 8-9. On cross-examination, Amanda Snow testified that she could not

say that Petitioner had not touched her inappropriately, because she could not

remember.  Id. at 11.  She testified that she did not remember anyone prior to the

_____

[2] Petitioner was initially charged with the crimes in November 1987, so the
victims were more than a year younger at the time of the offense.  See Supp. App. tab
A.

trial trying to get her to say things that were not true. Id. She testified that although

her affidavit stated that her trial testimony was based on her sister Tamara Snow's

statements, the affidavit was not true because she could not remember "copying off"

her sister. Id. at 11-12. Amanda Snow testified that she didn't know whether the

statement in the affidavit that "[Petitioner] did not do what I said he did" was true

because she could not remember what happened. Id. at 13. She did remember a

night when her sister Tamara took her to their grandmother's room and Tamara told

the grandmother that Petitioner had touched Tamara. Id. at 14.

Amanda Snow testified that she met with Petitioner's postconviction counsel,

Timothy Hartung, at the request of her paternal aunt and uncle. Id. at 15. She

subsequently went with her aunt to a bank to sign the affidavit, which her sister had

given to her. Id. at 16. She could not say whether her testimony at trial that

Petitioner had touched her was correct, because she could not remember. Id. at 17-

18.

On redirect examination, Amanda Snow testified that no one had told her not

to tell the truth at trial. Id. at 19. She testified that she believed Petitioner was in jail

because he hurt her mother. Id. at 19-20. Petitioner's postconviction counsel tried

to get Amanda Snow to testify that her mother had told her to change her story from

what was in the affidavit for the evidentiary hearing, but Amanda Snow testified that

she was not lying to the court at the evidentiary hearing. See id. at 18-20.

Tamara Snow testified that she was almost eighteen at the time of the

evidentiary hearing.  Id. at 22.  On direct examination, Tamara testified that she could not recall the contents of the recantation affidavit.  Id.  After reading the affidavit, she stated "I know for a fact he did molest me.  I was trying to put it in the past until I don't have to remember it."  Id. at 23.  She denied that the contents of the affidavit were true.  Id.  Tamara Snow testified that she executed the affidavit because her sister had asked her to help her out and she wanted to make her sister feel better.  Id.  Tamara Snow testified that Amanda Snow wanted Petitioner out of jail, but then the sisters began talking and Tamara told Amanda that what had happened to them was true.  Id. at 24.  Tamara Snow testified that when she was little she probably said things that didn't happen, but she knew "for a fact my father did molest me . . . and I still stick to that story that he did molest me and my sister in my grandmother's house."  Id. at 27.

On cross-examination, Tamara Snow answered "yes" when asked whether her recantation affidavit was  "a lie."  Id. at 28-29.  She testified to the details of when, where, and how Petitioner molested her, and that she saw him molest her sister Amanda.  Id. at 29.  Tamara Snow affirmed that she was telling the truth at the evidentiary hearing.  Id. at 30.  On re-direct examination, she testified that her story was consistent with her trial testimony in 1989.  Id. at 30.  She denied having told Amanda how to testify at the trial, and could not recall anyone telling her or Amanda how to testify at trial.  Id. at 31-32.

Petitioner's sister, Alice Smith, testified that she had heard Amanda and

Tamara Snow say that Petitioner had not molested them.  Id. at 32-33.  On cross-examination, she testified that Tamara Snow told her twice in 1987 that Petitioner did not molest her, and told her that a cousin had molested her.  Id. at 35, 37.  Alice Smith testified that Amanda Snow told her on three occasions in 1999 that she could not remember Petitioner molesting her.  Id. at 37.

At the conclusion of the evidentiary hearing, the court stated "[w]ell, I think this is not a hard case.  You got Tamara Snow that comes in and says on – when she's placed on – the witness stand by the defendant, she said that her father, the defendant, did molest her and she remembers it and that the affidavit is false, and then you got Amanda Snow saying that it's possible that he touched her, but she just doesn't remember.  There's no way in the world that entitles the defendant to a new trial . . . .  There's no question in my mind that you're not entitled to a new trial under Rule 3.850 with what you presented both in your motion and here today, so the motion is denied."  Id. at 42.

The court entered an order on July 21, 2000, summarizing its findings and particularly noting that Tamara Snow:

> [C]learly and convincingly stated that the Defendant did use his finger to penetrate her, and did touch Amanda's vaginal area in her presence.  She was emphatic that she recalls  this occurring to her and her sister even after thirteen years. . . . This Court finds the testimony of Tamara and Amanda at the evidentiary hearing to be credible and reliable.  The circumstances surrounding the production and signing of the affidavits of December 1999 are suspect.  Tamara clearly remembers the Defendant's

criminal conduct upon her and her sister and would testify
to such conduct in the future.  Amanda is unable to recall
what the Defendant did or did not do, but her testimony of
what she does recall is consistent with and corroborates
Tamara's testimony.  The Court does not find that the
evidence presented 'substantially undermine[s] [the]
confidence in the outcome of the prior proceedings or
[that] the newly discovered evidence [is] of such nature
that it would probably produce an acquittal on retrial.'

Supp. App. at 16 (citation omitted).

The District Court of Appeal *per curiam* affirmed on June 5, 2001, and denied

rehearing on July 20, 2001.  Supp. App. tabs F, H.

On February 26, 2002, Petitioner filed a state habeas corpus petition asserting

that his counsel's performance in the postconviction proceeding was ineffective.

Resp. App. at 21-23.  The trial court denied relief, finding that Petitioner's claim was

not cognizable.  Id. at 34-35.  The appellate court affirmed, and mandate issued on

January 15, 2003.  Id. at 37-39.  On March 17, 2003, Petitioner executed and filed

the instant federal habeas corpus Petition.

**Claims of Petition**

The Petitioner asserts the following three grounds for relief:

(1) He received ineffective assistance from his state postconviction counsel;

(2) He was denied due process on postconviction review because the state

court did not grant him a new trial on the basis of affidavits in which the two victims

recanted their trial testimony;

(3) He was denied due process on postconviction review because the state

court did not independently investigate whether the recanting witnesses were pressured to repudiate their affidavits and reaffirm their trial testimony at the evidentiary hearing on Petitioner's Rule 3.850 motion.

## Timeliness of Petition

Pursuant to 28 U.S.C. § 2244(d)(1), a one-year period of limitation applies to a habeas corpus application filed by a person in custody pursuant to a judgment of a state court.  The parties agree that for the purposes of the instant Petition, which is based on a claim of newly-discovered evidence, the one -year period runs from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." § 2244(d)(1).  Further, "[t]he time during which a properly filed application for State post-conviction or other collateral review . . . is pending shall not be counted toward any period of limitation under this subsection. "  § 2244(d)(2).

The Respondents contend that the Petition is time-barred because Petitioner's state habeas corpus petition filed on  February 26, 2002, asserting ineffective assistance of postconviction counsel, was not "properly filed" because the claim asserted therein  is not cognizable on federal habeas corpus review. See Amended Response, Doc 12.  Respondents argue that the state habeas corpus petition therefore did not toll the limitations period, which absent such tolling would have expired on May 10, 2002.  Respondents concede that if Petitioner's state habeas corpus petition is deemed "properly filed," then the instant federal habeas corpus

Petition is timely.

As Petitioner correctly points out, it is the law of this circuit that "the federal habeas statutory limitations period is tolled regardless of whether a properly filed state post-conviction petition or other collateral review raises a federally cognizable claim."[3]  Therefore, accounting for the tolling afforded by Petitioner's properly filed applications for collateral review following the denial of his Rule 3.850 motion, the instant Petition is timely.

### Exhaustion/Procedural Bar

There are two prerequisites to federal habeas review: (1) "the applicant must have fairly apprised the highest court of his state with the appropriate jurisdiction of the federal rights which allegedly were violated," and (2) "the applicant must have presented his claims in state court in a procedurally correct manner."[4]  This means that "a state prisoner seeking federal habeas corpus relief, who fails to raise his federal constitution[al] claim in state court, or who attempts to raise it in a manner not permitted by state procedural rules is barred from pursuing the same claim in federal court absent a showing of cause for and actual prejudice from the default."[5]

Respondents argue that Petitioner procedurally defaulted grounds (1) (ineffective assistance of postconviction counsel) and (3) (that the trial court should

---

[3]Ford v. Moore, 296 F.3d 1035, 1040 (11th Cir. 2002).

[4] Upshaw v. Singletary, 70 F.3d 576, 578-579 (11th Cir. 1995) (citations omitted).

[5] Alderman v. Zant, 22 F.3d 1541, 1549 (11th Cir. 1994) (citing Wainwright v. Sykes, 433 U.S. 72, 87 (1977)).

have independently investigated the circumstances surrounding the repudiation of the affidavits).

As to Petitioner's Ground (1), Petitioner's state habeas corpus Petition asserted that his federal constitutional right to due process had been violated on account of his postconviction counsel's asserted errors.  See Resp. App. at 21-33. The trial court rejected the claim as not cognizable under state law, and the state appellate court affirmed on that same basis.  See Resp. App. at 34-35, 37-38.  The record does not support a conclusion that a state procedural bar was applied to this claim.

As to Petitioner's Ground (3), Respondent contends that Petitioner procedurally defaulted the claim because it was raised in Petitioner's Motion for Rehearing following the state appellate court's affirmance of the denial of the Rule 3.850 motion, and Florida law does not permit the raising of new issues in a Motion for Rehearing.  See Resp., Doc. 12 at 11 n.6; see also Fla. R. App. P. 9.330.[6] Petitioner argues that he first raised this issue in his initial brief in the appeal from the denial of his Rule 3.850 Motion, and then he "elaborated" on the issue in his Motion for Rehearing following the appellate court's affirmance of the denial of his Rule 3.850 Motion. See Supp. App. tab G.  The Motion for Rehearing was denied without opinion.  See id. tab H.

---

[6] Respondent also contends that the issue was improperly raised in Petitioner's state habeas corpus petition, but Petitioner denies that he raised the issue in that petition.

The Court has reviewed Petitioner's initial brief in the appeal from the denial of his Rule 3.850 Motion, and even giving Petitioner the benefit of liberal construction the Court cannot conclude that Ground (3) was raised in the brief.  See Supp. App. tab C.   Although the state appellate court's denial of Petitioner's Motion for Rehearing does not state whether this claim was procedurally barred, this Court cannot presume that a state court ignores its own procedural rules when the Court issues only a one-sentence denial of relief.[7]   Because Fla. R. App. P. 9.330 precluded this issue from being raised in a Motion for Rehearing, the Court concludes that the state appellate court found the claim to be procedurally barred. Petitioner makes no argument that he can establish cause and prejudice sufficient to overcome the procedural default.   Accordingly, the Court will not enterain Petitioner's Ground (3).[8]

## **Merits of Claims**

Pursuant to the Antiterrorism and Effective Death Penalty Act (AEDPA), the role of a federal habeas court when reviewing a state prisoner's application pursuant to 28 U.S.C. § 2254 is limited.[9]  Specifically, a federal court must give deference to

---

[7]Coleman v. Thompson, 501 U.S. 722, 735-36 (1991).

[8] To the extent that Petitioner argues that there has been a "fundamental miscarriage of justice" sufficient to overcome the procedural bar, see Murray v. Carrier, 477 U.S. 478 (1986), the Court would find, as with Ground (2) below, that Petitioner's claim nevertheless does not present a ground for federal habeas corpus relief because it alleges only a defect in a state collateral proceeding.

[9] See Williams v. Taylor, 529 U.S. 362, 403-404, 120 S.Ct. 1495, 1518-19 (2000).

state court adjudications unless the state court's adjudication of the claim is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."[10]   The "contrary to" and "unreasonable application" clauses provide separate bases for review.[11]

Further, under § 2254(d)(2), this Court must determine whether the state court's adjudication resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.[12]  The AEDPA also directs that the factual findings of the state court are afforded a presumption of correctness that can only be rebutted by clear and convincing evidence.[13]   This presumption of correctness applies to factual determinations made by both the state trial and appellate courts.[14]

### Ground One

Although Petitioner preserved Ground One for federal review, it is plain that his claim is not cognizable under § 2254.  Section 2254(i) provides that "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-

---

[10] See 28 U.S.C. § 2254(d)(1).

[11] Wellington v. Moore, 314 F.3d 1256, 1260-61 (11th Cir. 2002).

[12] See also Van Poyck v. Florida Dept. Of Corr., 290 F.3d 1318, 1321 (11th Cir. 2002) (per curiam) ("[u]nless a state court decision is directly contrary to Supreme Court case law, we review state court findings of fact and conclusions of law for reasonableness").

[13] See 28 U.S.C. § 2254(e)(1).

[14] Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003).

conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." Although Petitioner contends that the statute is unconstitutional, the statute merely codified a rule that already had been recognized by the Supreme Court.[15] Accordingly, the state court's rejection of this claim was neither contrary to, nor an unreasonable application of, clearly established Federal law.

### Ground Two

Petitioner argues that he was denied due process under the U.S. Constitution when the state court refused to grant him a new trial on the basis of his newly-discovered evidence in the form of the victims' affidavits, because such a new trial would have afforded him the opportunity to present other evidence that would call the victims' credibility at trial into doubt. See Petition, Doc. 1, at 25-32.

Petitioner's allegation, although framed in constitutional terms, does not state a cognizable basis for federal habeas corpus relief. Determination of whether a state prisoner in Florida should be afforded relief on a state postconviction motion claiming the existence of newly-discovered evidence is solely within the province of the Florida courts.[16]  Further, "while habeas relief is available to address defects in a criminal defendant's conviction and sentence, an alleged defect in a collateral

---

[15] See Henderson v. Campbell, 353 F.3d 880, 892 (11th Cir. 2003) (citing Coleman, 501 U.S. at 752 (because there is no constitutional right to an attorney in state post-conviction proceedings, "a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings.")).

[16] See Spradley v. Dugger, 825 F.2d 1566 (11th Cir.1987).

proceeding does not state a basis for habeas relief."[17]   Thus, to the extent that

Petitioner contends he was denied due process in connection with his Rule 3.850

Motion, that claim must be denied.

Petitioner further argues, however, that the asserted due process errors at his

postconviction proceeding relate directly to his criminal trial and conviction, and in

particular call into doubt the credibility of the victims' testimony at trial.  See Pet.

Reply to Amended Response, Doc. 13.

Under the AEDPA, "substantial deference is to be accorded a state court's

findings of fact."[18]   Section 2254(e)(1) provides that "a determination of a factual

issue made by a State court shall be presumed to be correct.  The applicant shall

have the burden of rebutting the presumption of correctness by clear and convincing

evidence."

In this case, the trial court had the opportunity to see and hear the victims'

testimony at the evidentiary hearing on Petitioner's Rule 3.850 motion, and made a

finding that such testimony was reliable, credible, and consistent with the testimony

at Petitioner's trial such that it did not undermine the court's confidence in the

outcome of that trial.  See Supp. App. at 16.  Although Petitioner conclusionally

alleges that the victims' testimony at trial and at the evidentiary hearing may have

resulted from witness tampering or coercion, he has offered no evidence in support

---

[17] See Quince v. Crosby, 360 F.3d 1259, 1262 (11th Cir. 2004).

[18] Henderson, 353 F.3d at 890-91.

of his allegation.  Petitioner has therefore failed to sustain his burden of rebutting the presumption of correctness that is afforded the state court's findings.   See § 2254(e)(1).  The state court's rejection of this claim was neither contrary to, nor an unreasonable application of, clearly established Federal law.

## Conclusion

For the foregoing reasons, the Petition  is **DENIED** with prejudice.  The Clerk is directed to enter judgment accordingly, terminate any pending motions, and close the file.

**IT IS SO ORDERED.**

**DONE AND ORDERED** at Ocala, Florida, this 30th day of March 2006.


_____

UNITED STATES DISTRICT JUDGE

c:  Joe R. Snow
      Counsel of Record